# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

GLEN TAYLOR,                )
                             )
               Plaintiff,     )
                             )
     vs.                   )   CAUSE NO. 2:22-CV-32-PPS-JPK
                             )
KILOLO KIJAKAZI,      )
Acting Commissioner of the Social Security   )
Administration,         )
                             )
             Defendant.    )

## OPINION AND ORDER

Glen Taylor, a 50 year old man, appeals the Social Security Administration's decision to deny his application for disability insurance benefits and supplemental security income. Taylor suffers from several impairments, including degenerative disc disease and major depressive disorder. [Tr. 19.][1] An administrative law judge (ALJ) found that Taylor was not disabled within the meaning of the Social Security Act and that he had the residual functional capacity (RFC) to perform light work with a number of additional restrictions. [Tr. 21.] Taylor challenges the ALJ's ruling on two principal grounds: (1) the ALJ erred in discounting the evidence from Taylor's treating physician; and (2) the ALJ erred in evaluating Taylor's subjective symptoms. Because I find the ALJ properly evaluated and explained his assessment of the treating physician and

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 9.

appropriately considered Taylor's subjective symptoms, I will AFFIRM the ALJ's decision.

## Factual Background

The ALJ found that Taylor has the following severe impairments:  chronic obstructive pulmonary disease (COPD), chronic bronchitis, degenerative disc disease of the lumbar spine, and major depressive disorder.  [Tr. 19.]  Accounting for these impairments, the ALJ concluded that Taylor had the residual functional capacity (RFC) to perform light work as defined by the relevant regulations where he can lift (and push or pull) 20 pounds occasionally and 10 pounds frequently and can stand or sit six hours in an eight hour day, along with a number of other immaterial other restrictions. 20 CFR §§ 404.1567(b), 416.967(b). [Tr. 21.]  Based on that RFC, the ALJ concluded that Taylor wasn't disabled because he could do a number of jobs that are plentiful in the national economy. [Tr. 26-27.]  What's more, the ALJ concluded that "even if the claimant was limited to a sedentary exertional level with the same factors discussed above," that Taylor could still do an array of other jobs available in the national economy. [Tr. 27.]

Taylor testified at the telephonic hearing about his chronic back and leg pain. [Tr. 48-57.]  He has pain in his lower back that travels down his left leg. [Tr. 48.]  He tried epidurals and physical therapy, as well as medications like Norco (but stopped taking Norco because his insurance wouldn't cover it). [Tr. 49-50, 52.]  According to Taylor, the medications "help me a little bit, but not - - not as much as anybody would think." [Tr.

50.]  The positive effects of the epidural injections lasted only one to two weeks. [Tr. 49.]

Moreover, he thought physical therapy actually made his pain worse. [Tr. 49.]

According to Taylor, some days the pain is worse than others, and he believes more

activity increases his level of pain. [Tr. 50.]  When the pain is really bad, he has to sit

down or lay down. [Tr. 51.]  He has difficulty sleeping because of the back pain, and

sleeps in a recliner. [Tr. 51-52.]  Taylor said he can lift a gallon of milk, but it hurts. [Tr.

55.]  He is not able to do any chores at home.  *Id.*  According to Taylor, on a good day,

he can stand maybe 10-15 minutes, but on a bad day, he can only stand for a minute or

two. [Tr. 55-56.]  Then he gets numbness in his hip down his leg, and has to sit or lay

down. [Tr. 56.]  Taylor said he changes positions at least five times an hour. [Tr. 57.]

Taylor is stressed, and takes Olazepram and Prozac for depression. [Tr. 59-60.]

Taylor used to do construction work (drywalling and painting), as well as drive a

forklift and do warehouse manual labor, but he stopped because of the pain in his back.

[Tr. 45-47.]  Taylor claims he was fired from the forklift job because he was missing so

many days due to his back pain. [Tr. 47.]

## Discussion

Before addressing the issues presented in this case, let's start with a review of the

legal framework.  I am not supposed to determine from scratch whether or not Taylor is

disabled.  Rather, I only need to determine whether the ALJ applied the correct legal

standards and whether the decision is supported by substantial evidence.  *See* 42 U.S.C.

§ 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d

923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not a particularly rigorous one. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

As stated above, Taylor has two principal claims. First, that the ALJ erred in how he evaluated the evidence from Taylor's treating physician, Dr. Patel. And second, that the ALJ was incorrect in discounting his subjective symptoms. I will take up each in turn.

## I.    Examination of the Treating Physician

In a Physical Residual Functional Capacity Questionnaire completed on January 22, 2020, Taylor's treating physician, Dr. Patel, noted that he had been seeing Taylor for 9 months. [Tr. 591.] He diagnosed Taylor with severe right lumbar radiculopathy, multilevel lumbar herniated disk. *Id.* According to Dr. Patel, Taylor could only walk one city block without rest or severe pain, he could sit for 30 minutes at one time, stand for 20 minutes at one time, could sit and stand/walk less than 2 hours total in an 8-hour

4

working day, he would need a job that permits shifting positions, he would need unscheduled breaks every 30 minutes, he would likely be absent more than 4 days per month, and he had significant limitations with reaching, handling or fingering, and could never use his hands to grasp, turn, or twist objects, and could never use his fingers for fine manipulations.  [*Id.* 591-93.]  The ALJ found this opinion "not persuasive." [Tr. 25.]

Taylor argues that the ALJ improperly discounted the treating opinion evidence of Dr. Patel. [DE 13 at 8-12.]  For claims filed after March 27, 2017, like this one, the old "treating physician rule" has been replaced by 20 C.F.R. §§ 404.1520c, 416.920c  Treating physician opinions are no longer entitled to presumptive controlling weight.  *Id.*  Rather, the ALJ now considers the persuasiveness of medical opinions using several factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the opinion.  *Id.* at §§ 404.1520c(c), 416.920c(c).  Supportability and consistency are the most important factors, and the only ones that must be articulated in the ALJ's opinion.  *Id.* at §§ 404.1520c(a), (b)(2), 416.920c(c).  "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," whereas "consistency assesses how a medical opinion squares with other evidence in the record."  *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. §§ 404.1520c(b)(1), (2)).  While an ALJ generally needs to only minimally articulate his reasoning for how he assessed a medical opinion, he must still

consider the regulatory factors and build a "logical bridge" from the evidence to his conclusion.  *See Evonne R. v. Kijakazi*, No. 20 C 7652, 2022 WL 874650, at *5 (N.D. Ill. Mar. 24, 2022).

The Seventh Circuit has confirmed that an ALJ may reject a treating physician's opinion if the opinion is not well-supported and is inconsistent with the record.  *See Prill v. Kihakazi*, 23 F.4th 738, 751 (7th Cir. 2022) (if the treating physician's opinion is "internally inconsistent - as well as inconsistent with objective medical evidence in the record " an ALJ can give the opinion less weight); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it.").

Here, the ALJ specifically analyzed the supportability and consistency of Dr. Patel's opinion.  Here's what the ALJ said:

> The opinion is *not supported* by Dr. Patel's own mostly normal clinical examination findings, including signs of normal breathing, intact neurological functioning, and his conservative treatment history involving primarily medication management (Exhibit 7F/2, 4, 12F/2, 13F/1, 3, 17F/1, 3, 5, 8, 9, 16F/7.).  Additionally, the opinion is *not consistent* with the claimant's consultative examination findings showing essentially normal physical functioning, including signs of normal breathing with no rales, rhonchi or wheezes, normal range of motion in his extremities and spine, normal motor strength in his upper and lower extremities, normal grip strength, normal gait without an assistive device and intact sensation and reflexes (Exhibit 4F/2-3).

[Tr. 25 (emphasis added).] The ALJ didn't just use the buzz-words of "not supported" and "not consistent." Rather, he cited to specific evidence in the record that showed normal clinical findings, physical functioning, and conservative treatment.

For example, to bolster his conclusion that Dr. Patel's opinion was not well supported, the ALJ cited Dr. Patel's examination notes from exams that occurred in July 2, 2019, through September 8, 2020. [Tr. 25 (citing Exhibit 7F/2, 4, 12F/2, 13F/1, 3, 17F/1, 3, 5, 8, 9, 16F/7.)] Dr. Patel's notes all state that Taylor subjectively complained about lower back pain and pain radiating to his left leg which was a 10/10 on every visit, but Dr. Patel's notes also all indicate under the "objective" portion of the medical documents that the clinical findings were all normal (with the one exception of the notes under musculoskeletal which read "left leg - SLR upp 45."). [Tr. 514, 516, 567, 584, 586, 630, 632, 634, 637-38.] In looking at the subjective complaints of pain by Taylor to Dr. Patel, "where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it." *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). It is also appropriate to consider Dr. Patel's own notes of his objective findings during Taylor's examinations. *See, e.g., Florentino Franco Sanchez v. Kijakazi*, No. 21-CV-1442-SCD, 2023 WL 180062, at *6 (E.D. Wis. Jan. 13, 2023) (noting that a patient's regular physician may want to do a favor for a friend and client when giving an opinion on disability and "[i]t's therefore fair game, and quite proper, for the ALJ to consider the physician's own records . . . in addressing the supportability of the opinion.").

In rejecting Dr. Patel's opinion and addressing the consistency of it, the ALJ also cited to the findings of the state consultative examiner, Dr. Gupta, who examined Taylor in May 2019. [Tr. 25 citing (Exhibit 4F/2-3).]  Dr. Gupta found in his examination:

> normal curvature to the cervical, thoracic and lumbar spine.  There are no anatomic deformities noted.  There is no spinous or paraspinal tenderness in any region.  There is full range of motion in lumbar, cervical and thoracic region.  Straight leg raising is negative bilaterally. . . .  LOWER EXTREMITIES: there are no anatomical deformities noted.  There is no stiffness, effusion, amputation, atrophy, ulcers or edema in lower extremities.  No signs of poor circulation or skin discoloration in any extremity.  There is a full range of motion in all lower extremities.  Strength is 5/5 in all lower major muscle groups. . . GAIT: he has a normal gait without an assistive device.  He is able to stoop and squat without difficulty.  He is able to walk heel to toe and tandemly without difficulty.  He is able to get on and off the examination table without difficulty and did not require any assistance.  He is able to stand from a sitting position without difficulty.

[Tr. 491-92.]  The Seventh Circuit has held that "[a]n ALJ may discount [even] a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician . . . as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."  *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citations omitted); *see also Prill*, 23 F.4th at 751 ("the ALJ was permitted to afford great weight to Dr. Chan's opinion as a consulting physician, partly because the ALJ determined that his opinion was consistent with the objective medical evidence.").  Here, the ALJ has plainly satisfied this minimal articulation.  The ALJ specifically stated he found Dr. Patel's opinion not supported by his own notes during other examinations

documenting normal clinical examination findings, as well as Taylor's conservative treatment history.  Additionally, he found Dr. Patel's opinion not consistent with the consultative examination findings showing essentially normal physical functioning including normal range of motion in his extremities and spine, and normal gait.

Taylor points to a portion in Dr. Gupta's evaluation where he reports that Taylor has difficulty walking [DE 21 at 7], but it is important to look at Dr. Gupta's entire medical source statement which provides:

> Claimant is able to do work related activities such as sitting, standing, lifting, carrying and handling objects but has difficulty walking due to experiencing shortness of breath.  They are able to hear, see and speak normally.  They are able to understand with normal concentration, memory, and social interactions.

[Tr. 492.] The ALJ addressed this in his opinion, finding Dr. Gupta's opinion was partially persuasive. [Tr. 24.]  The ALJ found the opinion that Taylor has difficulty walking was not persuasive because it was not supported by Dr. Gupta's own consultative examination findings, including signs of a normal gait and the ability to walk heel to toe and tandemly without difficulty, and get on and off the exam table without difficulty. [Tr. 24-25.]  The ALJ found the remainder of Dr. Gupta's findings persuasive, because they were consistent with the mainly benign clinical examination findings, as well as supported by Dr. Gupta's own consultative exam findings, including normal range of motion in his extremities and spine, normal strength, and normal gait. [Tr. 25.]

In his opinion, the ALJ also cited to the opinions of the state agency medical consultants, Dr. Sands and Dr. Corcoran, whose findings the ALJ found "persuasive." [Tr. 24.] Although the ALJ did not cite their opinions in the paragraph addressing Dr. Patel's opinion (instead only referring to Dr. Gupta's opinion in that paragraph), courts read an "ALJ's decision as a whole," *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004), thus this previous passage in the ALJ's  opinion also helps explain the ALJ's discounting of Dr. Patel's opinion.  Dr. Sands and Dr. Corcoran  found Taylor could lift 20 pounds occasionally and 10 pounds frequently, and he could stand, walk or sit for six hours in an eight hour workday, findings which, as I mentioned before, the ALJ found "persuasive." [Tr. 24.]  The ALJ noted that the state agency medical consultants' findings are "supported with an in-depth explanation regarding the basis for the findings" including the "findings showed full range of motion in all areas, intact motor strength in the bilateral extremities, intact sensation and a normal gait (Exhibit 2A/11, 6A/10)." [Tr. 24.]  Additionally, those findings "are consistent with the claimant's mainly benign clinical examination findings, including no evidence of any significant motor strength, sensation, reflex or gait deficits (Exhibits 7F/2, 4, 12F/2, 13F/1, 3, 17F/1, 3, 5, 8, 9, 16 F/7)." *Id.*  The consideration of the consultative examiner (Dr. Gupta) as well as the state agency medical consultants (Dr. Sands and Dr. Corcoran) is a regarded way to discount a treating physician's medical opinion.  *See Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (finding an ALJ can discount a treating physician's medical opinion if the opinion "is inconsistent with the opinion of a consulting

10

physician."); *Shaw v. Kijakazi*, No. 20-cv-1005-bhl, 2022 WL 17581784, at *8 (E.D. Wis. Dec. 12, 2022) (denying motion to remand, finding "[t]he ALJ's decision to give greater weight to the state-agency doctors' opinions than that of [claimant's] treating physician is supported by substantial evidence.").

To the extent Taylor criticizes the ALJ's handling of Dr. Patel's questionnaire, I think this is best viewed as a nitpick. Taylor finds it odd that the ALJ made a reference to Taylor's "normal breathing" and "intact neurological functioning" in his rejection of Dr. Patel's opinion. [DE 13 at 8, DE 21 at 3.] But Dr. Patel was Taylor's primary treating physician. Recall that Taylor suffered from COPD [Tr. 19], so I don't think there is anything unusual about the ALJ commenting on Taylor's exam that showed essentially normal physical functioning, including signs of normal breathing. Likewise, Taylor also claims "the ALJ did not explain why the opinion was unsupported because Mr. Taylor's neurological functioning was generally intact" arguing the neurological examination considered whether there was localized findings like weakness, tremors, or ataxia. [DE 13 at 9, DE 21 at 3.] But again, Dr. Patel treated Taylor for more than just back pain [Tr. 630-41], and Dr. Patel noted in the residual functional capacity questionnaire that Taylor's pain "constantly" interfered with his concentration. [Tr. 591.] So I don't think it is irrelevant to the ALJ's consideration that Dr. Patel's treatment notes regularly showed intact neurological functioning. And it is completely relevant for the ALJ to emphasize that the consultative examiner, Dr. Gupta, found a normal gait without an assistive device, since Dr. Patel was opining on Taylor's ability to walk. Finally, and

11

perhaps most importantly, Taylor has not showed why the ALJ's listing of these normal findings (i.e. breathing, neurological functioning, motor strength, grip strength, etc.) actually prejudices him. While they might not be entirely germane to the ALJ's analysis of Taylor's back pain, Taylor had other maladies as well, including COPD, and of course the ALJ is supposed to consider all of his impairments in combination. So I don't think I should penalize the ALJ for mentioning Taylor's breathing and neurologic functioning when assessing Dr. Patel's opinion.

Taylor also asserts that the ALJ erred by not considering evidence consistent with Dr. Patel's opinion. [DE 13 at 11, DE 21 at 4.] But this is not true—the ALJ *did* consider such evidence, albeit sometimes at different points in his opinion. *Where* the ALJ made these points in his opinion is unimportant because I'm required to read an "ALJ's decision as a whole," and affirm when any part of that decision articulates a sufficient basis to discredit an examining physician's opinion. *See Rice*, 384 F.3d at 370. In this case, the ALJ specifically addressed and noted the following evidence that could be considered consistent with Dr. Patel's opinion: the findings of positive straight leg raising [Tr. 23], the physical therapy notes showing slightly reduced strength and range of motion [Tr. 23], and he considered Taylor's function reports and testimony regarding his limited abilities to stand and walk [Tr. 22]. Taylor thinks mentioning the positive straight leg raising findings in the ALJ's review of the evidence is not enough, stressing that the ALJ has to set forth a supported bridge from the evidence to his conclusion rejecting Dr. Patel's opinion. [DE 21 at 4.] I certainly don't dispute that an ALJ must still

provide a written explanation for his conclusion about the treating physician's opinion, drawing a logical bridge between the evidence and the conclusion. *See Varga v. Kijakazi*, No. 3:20-cv-575-JPK, 2021 WL 5769016, at *3 (N.D. Ind. Dec. 6, 2021). But in this case, the ALJ did discuss the most important factors (the only ones which must be explicitly discussed) – supportability and consistency of Dr. Patel's opinion, and he did it in a sufficient manner to create a logical bridge between the evidence and his conclusions.

To the extent Taylor tries to rely on the results of the diagnostic imaging to attack the ALJ's decision, this is also misguided because the ALJ, Dr. Patel, and the state agency medical consultants Dr. Sands and Dr. Corcoran all considered these findings, and the ALJ and state agency consultants found, even after weighing the MRI, that Taylor was still capable of light work. [Tr. at 23, 127, 154.] While Taylor contends "[t]he Commissioner offers no rationale why their consideration of MRI results would supplant Dr. Patel's" [DE 21 at 5], the state agency medical consultants "are highly qualified and experts in Social Security disability evaluation," 20 C.F.R. § 404.1513a(b)(1), and I "will not reweigh evidence or substitute [my] judgment for that of the ALJ's." *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

Taylor also argues that the ALJ erred in relying on his conservative treatment without providing a basis that surgery or some other more aggressive measure was considered as the preferred option to obtain greater pain relief. [DE 13 at 10.] But the ALJ properly noted that Taylor's treatment history mainly involved medication management, as well as some spinal injections. [Tr. 22, 24.] And the ALJ explained why

13

he thought this was "conservative," clarifying that his treatment was conservative because "[f]or example, the claimant managed his spinal condition conservatively with medication and spinal injections, with no evidence of any significant motor strength, sensation, reflex or gait deficits." [Tr. 22.]  The Seventh Circuit has recognized that "the regulations expressly permit the ALJ to consider a claimant's treatment history."  *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(3)(v)).  While it might have been wise for the ALJ to articulate in his decision that he believed Taylor's treatment was conservative because he had not undergone back surgery, under the circumstances, I think it can be inferred that the ALJ reached this conclusion.  And this conclusion is one that is endorsed by the Seventh Circuit.  *See Prill*, 23 F.4th at 749 (finding ALJ did not err in considering claimant received conservative treatment where she "did not undergo major surgery during the period of time under consideration, and the most aggressive treatment she received consisted of the injections that have been described [by the Seventh Circuit] as conservative treatment.").

Taylor contends he "should not be penalized for following the treatment course recommended by his providers." [DE 21 at 10.]  But I don't think that is what happened here.  The ALJ properly considered Taylor's treatment in evaluating Dr. Patel's opinion, as well as looking at Taylor's subjective symptoms (which will be discussed in the next section of this opinion), and "[a]n ALJ can, by and large, discount a claimant's testimony in light of routine and conservative treatment, so long as the ALJ does not unreasonably minimize the extent of the claimant's treatment, play doctor, or make

14

assumptions about the claimant's failure to seek treatment without asking the claimant about the reasons for noncompliance." *Cameron M. v. Kijakazi*, No. 1:21-cv-2544-MG-SEB, 2022 WL 4591461, at *8 (S.D. Ind. Sept. 30, 2022) (quotation omitted). Here, the ALJ abided by all of these tenets, and properly considered Taylor's treatment history.

Taylor asserts "[t]he ALJ failed to assess that Dr. Patel was in the unique position as the treating physician to assess the totality of Mr. Taylor's condition." [DE 13 at 11.] But the ALJ did acknowledge the treating relationship, specifying that Dr. Patel was "[a] medical provider for the claimant." [Tr. 25.] This is sufficient, as the ALJ specifically addressed the supportability and consistency factors, and the court "will affirm the ALJ's decision if [it is] confident that the ALJ's reasoning sufficiently accounted for the substance of the prescribed factors." *Ray v. Saul*, 861 F. App'x 102, 105-06 (7th Cir. 2021).

In sum, the ALJ properly explained how he weighed the opinion of Dr. Patel, Taylor's treating physician. He cited to actual evidence in the medical record, and he relied on the findings of the state consultative examiner, Dr. Gupta, as well as the state agency medical consultants, Dr. Sands and Dr. Corcoran. Ultimately, "the ALJ was presented with conflicting medical opinions . . . and so the ALJ had a duty to resolve that conflict." *Vrooman v. Kijakazi*, No. 20-2939, 2021 WL 3086196, at *2 (7th Cir. 2021) (quotation omitted). In this situation, I can't substitute my judgment for that of the ALJ.

## II.     Subjective Symptom Evaluation

Taylor next argues that the ALJ failed to set forth a legally sufficient symptom evaluation and in assessing Taylor's condition, he relied on his own perception of the medical evidence. [DE 13 at 12-13.] As recognized by the Seventh Circuit, "[s]ubjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of a disability and must be supported by other objective evidence." *Grotts v. Kihakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).  In evaluating a claimant's subjective symptom allegations, the regulations require an ALJ to assess the relevant medical evidence and several other factors, including the claimant's daily activities, effectiveness and side effects of any medication, treatment, other methods to alleviate symptoms, and factors that precipitate and aggravate pain.  SSR 16-3p, 2017 WL 5180304, at *5, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929.  "An ALJ need not discuss every detail in the record as it relates to every factor." *Grotts*, 27 F.4th at 1278.  Nevertheless, "an ALJ may not ignore an entire line of evidence contrary to its ruling." *Id.*  "As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility determination unless it is patently wrong." *Id.* at 1279 (citing *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021)).

The ALJ reasonably found that Taylor's subjective symptoms, which he testified about during the hearing, were inconsistent with the objective evidence. [Tr. 22.]  Here's what he said:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because of his conservative treatment and mainly benign examination findings.  For example, the claimant managed his spinal condition

16

conservatively with medication and spinal injections, with no evidence of any significant motor strength, sensation, reflex or gait deficits. His COPD appeared controlled with medication through the vast majority of the relevant period. Additionally, his consultative examination findings showed essentially normal physical functioning. Mentally, there was sparse evidence of treatment and he appeared mentally intact on examination during visits with his medical providers. Overall, this evidence is not consistent with disabling functional limitations.

[Tr. 22.] Despite Taylor's testimony regarding his lower back pain and numbness that radiates down his left leg, the ALJ noted that the only positive finding in Dr. Patel's treatment notes was a positive straight leg raise on the left side [Tr. 637, 638, 640, 23]. Moreover, Dr. Gupta, the consultative examiner in internal medicine, observed "signs of a normal gait and the ability to walk heel to toe and tandemly without difficulty and get on and off an examination table without difficulty" and other "mainly benign clinical findings." [Tr. 24, 25.] Dr. Gupta observed no spinal tenderness. [Tr. 491-92.] The state agency medical consultants, Dr. Sands and Dr. Corcoran, also found a full range of motion in all areas, intact motor strength, intact sensation and a normal gait, and no significant motor strength, sensation, reflex or gait deficits. [Tr. 24.]

Taylor's argument that "the ALJ ignored the contrary opinions of his own experts that Mr. Taylor's symptoms were supported by the objective medical evidence alone" is misleading. [DE 13 at 13, DE 21 at 9.] Taylor cites to a page in each of the state agency's residual functional capacity assessment, where the doctors answered "yes" to the question "[c]an one or more of the individual's medically determinable impairment(s) reasonably be expected to produce the individual's pain or other

17

symptoms?" [Tr. 127, 153.]  But both of these doctors also unconditionally found Taylor capable of light work, and assessed RFCs that were consistent with the ALJ's decision. [Tr. 127-29, 153-56.] The ALJ did not ignore the findings of these experts.

Finally, Taylor asserts that the ALJ did not specifically assess Taylor's account of his limited daily activities or explain why opiate pain medication prescribed to Taylor did not support crediting his symptoms. [DE 13 at 15.]  The ALJ didn't completely ignore these lines of evidence, though, as he did note that Taylor had been prescribed narcotic pain medication for a diagnosis of left lumbar radiculopathy.  [Tr. 23.]  And while he did not directly discuss Taylor's hearing testimony about specific examples of daily living activities, the ALJ did note that Taylor had lower back pain which was aggravated by increased exertional activity, he testified he could only stand or walk for short periods, and prefers to lay down during the day. [Tr. 22.]  Additionally, the ALJ clearly mentioned the third party statement completed by Taylor's wife, Trina Cox [Tr. 289-96], acknowledging that it "generally mirrored the claimant's allegations, including that the claimant's COPD symptoms limit his ability with exertional activities such as walking, stair climbing and lifting and that his depression affects his memory," but once again the ALJ found "the sentiment that [Taylor] is substantially limited is not consistent with the record as a whole, as discussed above (Exhibit 7 F/2, 4, 12 F/2, 13F/1, 3, 17F/1, 3, 4, 8, 9, 16 F/7)." [Tr. 26.]

Perhaps the ALJ should have expressly addressed Taylor's hearing testimony that he does not do any chores [Tr. 55], as well as the Function Report completed by Mr.

Taylor [Tr. 298-305] which claimed that Taylor only cooks frozen dinners or sandwiches [Tr. 300], and does not shop [Tr. 301]. But I do think the ALJ's thought process about Taylor's daily living activities was captured in the ALJ's statement that Taylor "testified that he is only able to stand or walk for short periods and prefers to lay down during the day." [Tr. 22.] I find this articulation of reasons discounting Taylor's subjective symptoms to be sufficient, as it does support the ALJ's reasoning. *See, e.g., Halsell v. Astrue*, 357 F. App'x 717, 723 (7th Cir 2009) (finding that even though the ALJ's reasoning was imperfect, there was still substantial evidence supporting the decision to discount the claimant's credibility); *see also Grotts*, 27 F.4th at 1278 (finding "[a]n ALJ need not discuss every detail in the record as it relates to every factor"when considering subjective statements by claimants). The ALJ did not ignore Taylor's symptom complaints; rather, he evaluated them and found them inconsistent with the medical evidence, examiner evidence, daily activities, and treatment history.

Additionally, the ALJ *did* include other references to Taylor's daily living activities in his opinion in assessing whether Taylor had a mental impairment. The somewhat troubling part is that some of the activities reported by Taylor conflict with his hearing testimony and questionnaire answers. For example, the ALJ recognized that Taylor was able to drive himself, citing to a consultative examination report dated May 31, 2019, where Taylor reported he drove himself to the exam. [Tr. 20, 490.] However, Taylor stated on his questionnaire (completed less than a month later, on June 16, 2019), that he did not have his driver's license [Tr. 301], but then at the ALJ hearing, Taylor

19

reported that he did have a driver's license (and got it back about a year and a half ago). [Tr. 44.] The ALJ also noted in his opinion that Taylor could do household tasks and chores, including cooking, cleaning and laundry on a weekly basis. [Tr. 20.]  In support of this statement, the ALJ cited to the consultative examination report from Dr. Rini, a psychologist, dated July 19, 2019, where Taylor communicated: "[h]e cooks weekly on the stove top.  He does various housecleaning tasks three times per week, and helps launder clothing for the household twice per week." [Tr. 562.] Again, this conflicts with Taylor's written questionnaire (completed three days earlier), which, when questioned about what household chores he does, Taylor only answered "I don't cut the grass anymore" and stated "I don't cook anymore I eat sandwiches or tv dinners" [Tr. 300] and his testimony at the hearing, held on October 20, 2020, stating he does not do any chores at home. [Tr. 55.]  There is evidence that the ALJ reviewed and considered Taylor's Function Report—the ALJ cited to it when noting that Taylor spends most of his days watching television. [Tr. 20, 298.]  All this is to say that the ALJ didn't ignore Taylor's daily living activities.  The ALJ evaluated and discussed several aspects of Taylor's daily living activities in his opinion and cited to evidence in the record for each statement in the opinion to support his conclusions.  While it seems like there was some conflicting evidence in the record about Taylor's abilities to complete daily tasks, that is left up to the ALJ to sort out, which he did.

Taylor cites case law and the regulations for the proposition that "we will not disregard an individual's statement about the intensity, persistence, and limiting effects

of symptoms solely because the objective medical evidence does not substantiate the

degree of impairment-related symptoms by the individual." [DE 21 at 9 (citing SSR 16-

3p, 2016 WL 1119029, at *5 (2016); *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015)).]

While this is of course true, the regulations go on to explain other evidence in the record

to be considered such as statements for the individual and medical sources, and of

course the factors to consider in evaluating symptoms including daily activity, factors

that precipitate and aggravate the symptoms, the type of medication a person takes to

alleviate the pain, and other treatment an individual receives.  SSR 16-3p, 2016 WL

1119029, at *5-7.  In this case, the ALJ did not only discount Taylor's subjective

symptoms because of objective medical evidence – he also considered many other

factors.

    It is for the ALJ to determine whether the claimant is credible, and in this case, he

did so and articulated his specific reasoning for this finding, with citations to the record.

As noted above, the ALJ discussed the largely normal clinical findings of Dr. Sands and

Dr. Corcoran, discredited the residual capacity questionnaire completed by Dr. Patel by

referring to normal clinical examination findings in the record and normal strength and

gait, relied upon Taylor's conservative treatment history, discredited the third party

statement by Ms. Cox and did, at least minimally, address Taylor's daily living

activities in his written opinion.  Under these circumstances, I cannot say that the ALJ's

credibility determination must be overturned because it is patently wrong.  *See Getch v.*

*Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("We defer to an ALJ's credibility determination and shall overturn it only if it is 'patently wrong.'").

**Conclusion**

For the reasons set forth above, the final decision of the Commissioner of Social Security denying Plaintiff Glen Taylor's application for disability and disability insurance benefits, and for supplemental security income, is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: January 20, 2023.

/s/ Philip P. Simon

**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**